# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS

## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| Metrofinanciera, S.A.P.I. de C.V., Sociedad | ) | Case No. 10-20666 |
|     Financiera de Objeto Múltiple, E.N.R., | ) | |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

## DECLARATION OF JOSÉ ANGEL AMARO
## PURSUANT TO 28 U.S.C. § 1746

I, José Angel Amaro, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.     I hereby submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Request for Related Relief (the "Petition"),[1] which is to be filed contemporaneously herewith, and which seeks entry of an order (i) recognizing the voluntary judicial restructuring proceeding (the "Mexican Proceeding") that was initiated by Metrofinanciera, S.A.P.I. de C.V., Sociedad Financiera de Objeto Múltiple, Entidad No Regulada ("Metrofinanciera" or the "Debtor") on August 13, 2009 in the Fourth Court of Civil and Labor Matters in the State of Nuevo León , *Juzgado Cuarto de Distrito en Materia Civil y de Trabajo en el Estado de Nuevo León* , a Mexican federal court ("Mexican Court") sitting in the city of Monterrey, state of Nuevo León, in the United Mexican States ("Mexico"),[2] as a foreign main proceeding pursuant to sections 1515

---

[1]     Defined terms used herein, but not defined herein, shall have the meanings ascribed to such terms in the Verified Petition.

[2]     Metrofinanciera filed a petition (the "Mexican Petition") requesting relief under the Concurso Law (as defined below) on August 13, 2009.  A true and correct copy of  the Mexican Petition is attached as Exhibit C hereto, and an English translation of the Mexican Petition is attached hereto as Exhibit D.  A true and correct copy

and 1517 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"), (ii)

recognizing me as the "foreign representative" of Metrofinanciera in connection with the

Mexican Proceeding,  and (iii) granting related relief pursuant to section 1520 of the

Bankruptcy Code.

     2.    I make this Declaration on the basis of documentation in my possession or

supplied to me and on facts and matters that are known to me or of which I have been informed

by others.  Where I have been informed by others, the information is true to the best of my

knowledge and belief and I state the source of that information.

     3.    Although Spanish is my native language, I am conversant in English and have

elected to execute and submit this Declaration in English.

     4.    I am Director of Finance of Metrofinanciera.

     5.    As the Director of Finance, I have detailed knowledge of Metrofinanciera's

financial condition, including knowledge of Metrofinanciera's US$100 million perpetual non-

cumulative subordinated 11.25% step-up notes (the "Perpetual Notes"), described more fully

below.  I am also familiar with Metrofinanciera's business records.  All such records are

generally created contemporaneously with the events they reflect and are kept in the ordinary

course of business by Metrofinanciera.

     6.    By resolution (the "Resolution"), I am authorized by the board of directors of

Metrofinanciera to file a chapter 15 petition on behalf of Metrofinanciera and to act as its

---

of the order commencing the Mexican Proceeding (the "Concurso Judgment") is attached as Exhibit C to the Declaration of Eugenio Sepúlveda Pursuant to 28 U.S.C. § 1746 (the "Sepúlveda Declaration") filed contemporaneously herewith.  An English translation of the Concurso Judgment is attached as Exhibit D to the Sepúlveda Declaration.

NEWYORK 7692552 (2K)

foreign representative in this chapter 15 case.  True and correct copies of the Resolution and an English translation thereof are attached hereto as Exhibit A and Exhibit B, respectively.[3]

7.     I am informed and believe that Metrofinanciera was incorporated under the laws of Mexico on August 9, 1996 as a non-bank limited purpose finance company (*sociedad financiera de objeto limitado* or *Sofol*) and began operations in December 1997.  I am further informed and believe that Metrofinanciera became a non-bank multiple purpose finance company (*sociedad financiera de objeto múltiple* or *Sofom*) in 2007.  Metrofinanciera's registered office and principal place of business is located in Monterrey, Mexico.

8.     Prior to the commencement of the Mexican Proceeding, Metrofinanciera offered a wide variety of mortgage products tailored to the specific needs of its customers.  The principal products offered by Metrofinanciera were (i) fixed interest rate mortgage loans provided primarily to lower-income individuals, and (ii) floating interest rate construction loans provided to housing developers and contractors to finance the purchase of undeveloped residential land, as well as the construction and development of residential housing. Metrofinanciera also provided and continues to provide certain other real estate services, such as appraisal services and credit investigations, to its customers and third parties.

9.     Metrofinanciera expanded rapidly throughout Mexico, opening 27 offices and branches across 21 Mexican states and building a national footprint.  Based on information provided by *Asociación Mexicana de Entidades Financieras Especializadas* as of April 30, 2010, Metrofinanciera is Mexico's third largest non-bank housing lender based on the principal amount of Metrofinanciera's total loan portfolio, with a 12.56% market share.

---

[3]     I have caused a translator to translate each of the documents appended hereto.

NEWYORK 7692552 (2K)

10.    As of December 31, 2009, Metrofinanciera's annual revenue from interest payments received from its borrowers was approximately P$1.3 billion under Mexican Financial Reporting Standards ("NIFs"), which translates to approximately US$101 million.[4]

11.    Metrofinanciera historically used a myriad of tools to fund its operations.  Among other things, Metrofinanciera routinely sold the mortgages and other loans it originated to securitization trusts.  Metrofinanciera also issued debt instruments such as bonds to third parties and obtained bank loans in varying amounts.  Many of the certificates issued by the Debtor's securitization trusts as well as the direct debt issued by the Debtor were rated by authorized rating agencies and registered in Mexico's National Securities Registry.

12.    Metrofinanciera was the servicer of most of its securitization trusts.  Its primary function as servicer was to collect payments due in respect of the mortgages and loans sold to a particular securitization trust and forward the payments to such trust.  Metrofinanciera collected a fee for serving as servicer.

13.    In 2006, Metrofinanciera issued and sold US$100 million of perpetual non-cumulative subordinated 11.25% step-up notes (the "Perpetual Notes").  The Bank of New York Mellon ("BNYM")[5] is the indenture trustee for the holders of the Perpetual Notes.  The overwhelming majority of the Perpetual Notes (92% of the principal amount) were placed outside the United States pursuant to Regulation S of the Securities Act of 1933.  A small amount (8.0% of the principal amount), however, was placed in the United States pursuant to Rule 144A of the Securities Act of 1933.  Over time, Metrofinanciera believes that an

---

[4]    Amounts stated in pesos in Metrofinanciera's Audited Financial Statements, dated April 28, 2010, for the year ending December 31, 2009, have been converted to U.S. dollars using an exchange rate of US$1.00 = P$13.0437.

[5]    All references to BNYM herein, unless otherwise noted, solely refer to BNYM in its capacity as indenture trustee for the holders of the Perpetual Notes and do not refer to BNYM in its individual capacity or as trustee for any of Metrofinanciera's other trusts.

NEWYORK 7692552 (2K)

additional amount of the Perpetual Notes issued under Regulation S flowed back to the United States in secondary market transactions outside of the Debtor's control, and is currently held by U.S. investors.  To the best of my knowledge, U.S. holders of the Perpetual Notes are Metrofinanciera's only U.S. creditors.

14.    Metrofinanciera's financial troubles can be traced to four distinct causes. First, Metrofinanciera engaged in a number of business practices apparently prevalent in the North American mortgage industry during the housing boom that lessened the value of its loan portfolio.  Among other things, Metrofinanciera: extended unsecured construction loans with loan-to-value ratios that were too low (contrary to its corporate policy); failed to secure certain of its mortgage loans with collateral by committing documentation and other errors; did not regularly collect interest payments from its borrowers; extended credit based on improper appraisals that overvalued the applicable properties; extended credit to borrowers without proper credit analysis; obtained loans in pesos and dollars for its own use at above-market interest rates; entered into loan modifications with its borrowers without good business reasons; and ceased funding numerous construction projects prior to their completion.

15.    Second, in order to fund its exponential growth and meet its cash needs, Metrofinanciera began to divert loan proceeds payable to its securitization trusts to use for general corporate purposes and began to use funds from new securitization trusts to make up the difference.   This practice was unsustainable.

16.    Third, the crash of worldwide financial markets in September of 2008 severely impacted Metrofinanciera's ability to obtain further financing, further straining its operation.

17.    Fourth, on November 26, 2008, Metrofinanciera requested that its creditors voluntarily forebear from receiving payments for a period of ninety (90) days.  As a result,

NEWYORK 7692552 (2K)

Standard & Poor's reduced Metrofinanciera's credit rating from a "B" to a "CCC" on November 27, 2008 based on its global scale and Moody's de Mexico reduced Metrofinanciera's credit rating from "B3" to "CAA2" on December 2, 2008 based on its Mexican scale. Consequently, Metrofinanciera could no longer issue short-term commercial paper, which was critical to meeting its cash needs.

18.  Recognizing the need to restructure its financial obligations and the costs and uncertainty of doing so inside a bankruptcy, Metrofinanciera began negotiations with its creditors to consensually restructure its financial affairs through a case under Mexico's *Ley de Concursos Mercantiles*, as officially published in the *Diario Oficial de la Federación* on May 12, 2000 (the "Concurso Law").

19.  In order to obtain maximum credibility with its creditors, all but one of the members of Metrofinanciera's board of directors and the Debtor's director general were removed. New board members and top management were appointed to restructure the Debtor. Ultimately, the Debtor was able to reach a restructuring agreement with all its creditors' groups and proceed with a prepackaged bankruptcy proceeding under the Concurso Law.

20.  Metrofinanciera's records reflect that there are approximately US$260 million of Secured Claims; US$312 million of Claims with Special Privilege; US$367 million of Securitization Claims; US$518 million of Other Unsecured Claims; and US$12 million of Claims Against the Estate being restructured through the Convenio.

21.  The Convenio provides that holders of Secured Claims and Claims with Special Privilege will either be unimpaired and paid according to their respective contracts, or be allowed to take title of their collateral in full satisfaction of such claims. The Convenio also provides that Claims Against the Estate are to be paid in full in the ordinary course of business.

NEWYORK 7692552 (2K)

22.   The Securitization Claims and Other Unsecured Claims will be satisfied by exchanging such claims (the "Exchange") for a mix of:  (a) common stock in the reorganized Metrofinanciera; (b) subordinated notes (the "Subordinated Notes") that (i) accrue interest at 4% per annum, capitalized quarterly, (ii) mature in 2020, (iii) can be involuntarily be converted into equity if the Debtor does not maintain certain capital ratios set forth in the Convenio and (iv) can be voluntarily converted to equity by the holders subject to certain limits; and (c) non-subordinated, cash-pay notes (the "Non-Subordinated Notes") that accrue interest at the *Tasa de Interés Interbancaria de Equilibrio* rate (the Mexican prime rate) plus 1%.  Commencing in 2012, the principal in respect of the Non-Subordinated Notes is payable in quarterly installments equal to 1.25% of the original principal amount of such notes.  All remaining unpaid principal (i.e., 65% of the principal) is due in 2020.

23.   Securitization Creditors will receive: (a) 24.70% of the allowed amount of their claim in common stock in the reorganized Metrofinanciera; (b) 36.70% of the allowed amount of their claim in Subordinated Notes; and (c) 38.60% of the allowed amount of their claim in Non-Subordinated Notes.  Other Unsecured Creditors will receive: (a) 49.00% of the allowed amount of their claim in common stock of the reorganized Metrofinanciera; (b) 34.00% of the allowed amount of their claim in Subordinated Notes; and (c) 17.00% of the allowed amount of their claim in Non-Subordinated Notes.

24.   Each share of common stock has a par value of P$10.00, and is exchanged on a Peso-for-Peso basis.   The Subordinated Notes and the Non-Subordinated Notes are denominated in Pesos and are also exchanged on a Peso-for-Peso basis.  Accordingly, for every P$10,000 of claims, a Securitization Creditor will receive (i) 247 shares with a cumulative par value of P$2,470, (ii) Subordinated Notes in the principal amount of P$3,670, and (iii) Non-

NEWYORK 7692552 (2K)

Subordinated Notes in the principal amount of P$3,860.  For every P$10,000 of claims, an Other Unsecured Creditor will receive (i) 490 shares with a cumulative par value of P$4,900, (ii) Subordinated Notes in the principal amount of P$3,400, and (iii) Non-Subordinated Notes in the principal amount of P$1,700.

25.    Pursuant to the Resolution and the directives contained therein, I have caused this Chapter 15 Proceeding to be commenced through the filing of the Petition.

26.    Notwithstanding that the Mexican Court has entered the Convenio Order, recognition of this Chapter 15 Proceeding is necessary so as to facilitate the administration and implementation of the Convenio, including the transfer of securities to the holders of Perpetual Notes.

27.    Recognition is particularly important here because I believe that it is possible for certain of the holders of Perpetual Notes to take action against Metrofinanciera in the United States and that they could do so even after receiving distributions under the Convenio.  This would disrupt the reorganization process that has commenced in Mexico, in derogation of the rights of Metrofinanciera and its other creditors.

28.    An action against Metrofinanciera and/or any of its assets in the United States would be an attempt to circumvent the bankruptcy reorganization process in Mexico.  If any such action is commenced, Metrofinanciera will suffer irreparable harm by being deprived of its right to, among other things, implement the terms of the Convenio.  Indeed, such action could threaten Metrofinanciera's entire reorganization process, and for such injury there are no sufficient money damages.

29.    As a result of these concerns, in addition to requesting that the Court recognize this Chapter 15 Proceeding, I am seeking entry of an order to enjoin creditors of

8

Metrofinanciera from initiating or continuing any action in the United States in respect of Metrofinanciera and/or its assets pending a hearing on the request for injunctive relief set forth in the Petition.

30.    I fully anticipate that Metrofinanciera will be able to administer and implement the Convenio under Mexican law.

**STATEMENT PURSUANT TO**
**SECTION 1515(c) OF THE BANKRUPTCY CODE**

31.    I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

32.    In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to Metrofinanciera that is known to me is the Mexican Proceeding.

**LIST PURSUANT TO BANKRUPTCY RULE 1007(a)(4)**

33.    I am informed that Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1007(a)(4) provides as follows:

> In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

34.    In compliance with Bankruptcy Rule 1007(a)(4), I hereby provide the following lists:

NEWYORK 7692552 (2K)

**Corporate Ownership Statement**

Pursuant to Bankruptcy Rule 7007.1, no person or entity directly or indirectly owns 10% or more of the beneficial interests of Metrofinanciera's equity interests as of the date hereof.

**Parties to Litigation in the United States**

As of the date of this Declaration, Metrofinanciera is not a party to any litigation pending in the United States of which I am aware.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  August 30, 2010
        Monterrey, Mexico

                                        */s/ José Angel Amaro*_____
                                        José Angel Amaro

NEWYORK 7692552 (2K)