**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 15 |
| Metrofinanciera, S.A.P.I. de C.V., Sociedad Financiera de Objeto Múltiple, E.N.R., | ) ) ) | Case No. 10-20666 |
| Debtor in a Foreign Proceeding. | ) ) ) |  |

**DECLARATION OF EUGENIO SEPÚLVEDA**
**PURSUANT TO 28 U.S.C. § 1746**

I, the undersigned, Eugenio Sepúlveda, declare as follows:

1.  I am a partner of the law firm of White & Case LLP, resident in the Monterrey, Mexico office. I hereby submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Request for Related Relief (the "Petition"),[1] which is to be filed contemporaneously herewith, and which seeks entry of an order (i) recognizing as a foreign main proceeding, pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the voluntary judicial restructuring proceeding (the "Mexican Proceeding") that was initiated by Metrofinanciera, Sociedad Anónima Promotora de Inversión de Capital Variable, Sociedad Financiera de Objeto Múltiple, Entidad no Regulada ("Metrofinanciera" or the "Debtor") on August 13, 2009, in the Fourth District Court of Civil and Labor Matters in the State of Nuevo León, *Juzgado Cuarto de Distrito en Materias Civil y de Trabajo en el Estado de Nuevo León*, a Mexican Federal Court ("Mexican Court") sitting in the city of Monterrey, state of Nuevo León, in the United Mexican

---

[1] Defined terms used herein, but not defined herein, shall have the meanings ascribed to such terms in the Verified Petition.

States ("Mexico") as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the Bankruptcy Code,² (ii) recognizing José Angel Amaro as the "foreign representative" of Metrofinanciera in connection with the Mexican Proceeding, and (iii) granting related relief pursuant to section 1520 of the Bankruptcy Code.

2.  I am counsel to Metrofinanciera in the Mexican Proceeding.  In connection with that role, I have been asked to submit this Declaration. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

3.  In this Declaration, after describing my background and qualifications, I will provide a description of the general structure of the *Ley de Concursos Mercantiles*, as officially published in the *Diario Oficial de la Federación* on May 12, 2000 (the "Concurso Law"), the application of the Concurso Law to Metrofinanciera's proceedings, and certain testimony that I think will be helpful to this Court's consideration of the Petition.

## BACKGROUND AND QUALIFICATIONS

4.  I graduated from the law school of *Universidad Panamericana* in 1995.  I obtained my license to practice law from the *Dirección General de Profesiones* of the *Secretaría de Educación Pública* in 1996. I earned my masters degree in business administration from Boston University in 1999.

5.  I began working as a part-time law-clerk *(pasante)* for a local law firm in Mexico City in 1990.  Such firm merged its practice with White & Case LLP in 1995.  I worked as an associate with White & Case from 1996 through 1997, and, thereafter left to attend business school at Boston University.

---

² A copy of the Concurso Judgment and an English translation thereof are attached hereto as Exhibit A and Exhibit B, respectively.

6. After receiving my masters degree in 1999, I returned to my practice as an associate of White & Case LLP in Mexico City. In 2002 I relocated to the Monterrey office and in 2004 became a partner.

7. As part of my practice, I have been involved in several workouts and debt rescheduling deals. Since September of 2008, I have represented and advised Metrofinanciera with respect to, and in connection with, the Mexican Proceeding and the related restructuring efforts.[3]

8. The law firm of Guerra Gonzalez y Asociados, SC, a Mexico City-based firm with offices in several cities in Mexico, including Monterrey served as co-counsel to Metrofinanciera in the Mexican Proceeding.

## THE CONCURSO LAW

9. Prior to May of 2000, the Law of Bankruptcies and Suspension of Payment (*Ley de Quiebras y de Suspensión de Pagos*, the "Old Law") governed insolvency proceedings. The Old Law was passed in 1943 and was amended a few times. Upon its enactment, the Old Law repealed the insolvency provisions contained in the 1890 Code of Commerce.

10. The Old Law, which remains in full force and effect with respect to any insolvency proceeding filed for prior to May 13, 2000, contemplated two types of procedures: (i) suspension of payments and (ii) bankruptcy. Any debtor had the right to request being placed in a suspension of payments proceeding before being declared in bankruptcy, with the stated goal of reaching a restructuring with its creditors, with the assistance of the court, to avoid bankruptcy. In a suspension of payments proceeding, the debtor continued to administer its

---

[3] The information concerning Metrofinanciera's Concurso Proceeding in Mexico is drawn either from public documents or from my personal knowledge. Where the overview contained in this Affidavit is concerned, I have not relied on confidential attorney-client communications or on confidential documents prepared in anticipation of litigation.

business and had possession of its assets, under the supervision of a court appointed *síndico*. If a restructuring agreement was not reached, then a debtor would be forced into bankruptcy.

11.     Mexico's insolvency proceedings are now governed by the Concurso Law. The Spanish version of the restated Concurso Law and an English translation thereof are attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively. The Concurso Law provides for a single insolvency proceeding (*concurso mercantil*), encompassing two successive phases (a conciliatory phase *(conciliación)* and a bankruptcy phase *(quiebra)*). The stated purpose of the conciliatory phase is to conserve or save the business enterprise through a restructuring agreement or convenio (the equivalent of a plan of reorganization). The stated purpose of the bankruptcy phase is to liquidate the business, as a whole or by sale of its individual assets, to repay its creditors. Prior to a debtor being placed "en concurso," a "visitador" appointed by the court must verify that the commencement standards have been met, including that the debtor has ceased, in general, paying his debts as they become due. *See Concurso Law Arts.* 2, 3 and 30. An order placing a debtor "en concurso" is, as I understand, akin to an order for relief in a chapter 11 case.

12.     The conciliatory stage is designed to be completed in 185 calendar days; although one 90-day extension may be granted if the conciliador or a qualified majority of creditors so request. An additional 90-day extension may be granted if the debtor and a qualified majority of creditors so request. The Concurso Law clearly provides that in no event may the conciliatory stage be extended beyond 365 days, whereupon, if there is no restructuring agreement or "convenio," bankruptcy and liquidation of assets immediately begin. *See id. at Art.* 145.

13.     The debtor, any creditor or the Office of the Attorney General, may file an insolvency petition. *See id. at Art.* 9. Nevertheless, the Concurso Law does not provide for

automatic relief upon the filing of a petition. Rather, a judge must find that the debtor is both a business entity and has, in general, ceased making payments to creditors in order for relief to be granted.

14. The Concurso Law establishes precise rules that determine when a debtor is "generally in default". The principal indications are the failure of a debtor to comply with its payment obligations in respect of two or more creditors, and the existence of the following two conditions: (i) 35 percent or more of the debtor's outstanding liabilities are 30 days past due; and (ii) the debtor has insufficient liquid assets and receivables —which are specifically defined— to support at least 80 percent of its obligations which are due and payable. A debtor can petition for concurso if any of the two tests are met. A creditor or the Office of the Attorney General can demand the concurso if both tests are met. *See id. at Arts.* 9 and 10.

15. Specific instances such as insufficiency of assets available for attachment or a payment default with respect to two or more creditors are considered by the Concurso Law to be facts which by themselves will result in a presumption of insolvency. *See id. at Art.* 11.

16. Only the Mexican federal courts have jurisdiction over insolvency proceedings. *See id. at Art.* 17. State courts do not.

17. The Concurso Law provides for the use and training of insolvency experts and creates an entity to coordinate their efforts, which is the Federal Institute of Specialists in Commercial Insolvency (*Instituto Federal de Especialistas de Concursos Mercantiles*, "<u>Ifecom</u>"). There are five board members (the director general and four other members - *vocales*) of the Ifecom, which is composed of professionals in the legal, accounting, financial and economic fields. The senior administrative authority of the Judiciary Branch (*Consejo de la Judicatura*) appoints the general director and the other four *vocales*. *See id. at Arts.* 311 *et seq.*

18.     Ifecom appoints three specialists in a typical concurso proceeding: (i) The visitor (*visitador*), whose duties are similar to that of an on-site auditor and investigate whether a debtor is eligible for a concurso proceeding; (ii) The conciliator (*conciliador*), which is appointed only after a debtor is placed "en concurso" and who has, among other things, the duty to mediate between creditors and the debtor to arrive at a consensual plan of reorganization, present a list of claims to the court for allowance and, in exceptional cases, request the removal (*desapoderamiento*) of the debtor from the management of the business; and (iii) The receiver (*síndico*), which may or may not be the conciliador and whose principal function is to take possession of the enterprise and proceed with the sale of assets when the debtor is declared "en quiebra" (among other things, if no restructuring plan can be reached during the conciliation phase). See *id.* at Art. 55 *et seq*.

19.     It is important to note that, although a conciliador is appointed when a debtor is placed "en concurso," the debtor remains in possession of its assets and under the control of prior management unless the conciliator requests that the court appoint a trustee through the exceptional remedy of removal (*desapoderamiento*). See *id. at Arts.* 74 and 81.

20.     There are numerous restrictions in the Concurso Law to assure that the visitador, conciliador and sindico are disinterested and have no conflicts of interest. Among other things, the appointment procedure is to be based on random selection from the experts registered with the Ifecom. See *id. at Arts.* 311-V and 328.

21.     The debtor, together with a qualified majority of creditors may replace or appoint a different person as conciliador or síndico, including a person not registered with the Ifecom. In cases involving the insolvency of a company operating under a federal concession, the

conciliador is appointed at the request of the concession-granting authority. *See id. at Arts.* 147, 174 and 240.

22.     A debtor who files a concurso petition must furnish, among other information, detailed lists of creditors with a description of the nature of the debts. *See id. at Art.* 20.

23.     The day after a concurso petition is accepted for filing, the judge overseeing the concurso proceeding will send a copy of the petition to the Ifecom ordering it to designate a *visitador* within five days. The *visitador* will choose persons to assist him. The judge will order the visit and immediately notify the debtor. The *visitador* and his assistants will review the books and records of the debtor and prepare minutes of the visit. *See id. at Art.* 29.

24.     The visitador may request that the judge issue the precautionary measures (such as injunctions and other preliminary relief) needed to preserve the assets of the debtor pending a determination of whether the debtor is eligible to be "en concurso." *See id. at Art.* 37.

25.     Once the *visitador* has completed his work, the judge must render a judgment of declaration of concurso which, if declaring the debtor "en concurso", shall contain, among other things, (i) an order to the Ifecom to appoint the *conciliador*; (ii) declaration of the opening of the conciliatory stage unless the debtor has requested its bankruptcy (i.e., liquidation without any attempt at restructuring); (iii) an order to the debtor to deliver books and records to the conciliador; (iv) an order to the debtor to suspend the payment of its indebtedness; and (v) an order to publish a notice to all creditors, so that they may appear in the proceeding. *See id. at Art.* 43.

26.     Under the Concurso Law, notices must be given to both foreign and domestic creditors equally.  Further, the court shall order that appropriate steps be taken to notify any creditor whose address is not yet known.  Notice to non-Mexican creditors must be given

individually, unless the court considers that, under the circumstances, some other form of notification would be more appropriate.  When a notification of commencement of a case is to be given to foreign creditors, such notice shall, among other things, provide a 45-day period for filing proofs of claim (as opposed to a 20-day period for Mexican creditors),specify the place for filing such proofs of claim; and indicate whether secured creditors are required to file proofs of claim. *See id. at Art.* 291.

27. The judgment that declares the debtor "en concurso" (or denies such declaration) can be appealed by the debtor or the demanding creditors or the Office of the Attorney General. *See id. at Art.* 49.

28. Once a judgment that declares the debtor "en concurso" is entered, attachment or execution of assets are stayed during the conciliatory stage, with the sole exception of some labor-related obligations. *See id. at Art.* 65.

29. The Concurso Law establishes provisions which are designed to protect the monetary value of claims against inflation. All claims are converted into inflation-linked units of account known as *unidades de inversión* or *UDIs* and cease accruing ordinary and default interest.  Only claims with a perfected *in rem* security interest continue to accrue ordinary interest. *See id. at Art.* 89.

30. The Concurso Law presumes that the debtor was insolvent during the 270 calender day period prior to the judgment declaring insolvency (the "retroactive period"). Nevertheless, the judge may extend such period upon the reasoned request of the *conciliador* or any creditor. Conveyances of assets and the creation or increase of security interests within the retroactive period will be presumed to be fraudulent as to creditors and will not be recognized. *See id. at Arts.* 112 *et seq*,

31.     The purpose of the conciliation phase is to reach a consensual restructuring plan or "convenio concursal." The formal requirements to be included in a convenio concursal have been simplified by the Concurso Law, as compared to the Old Law. While the Concurso Law includes precise rules as to the contents of the restructuring agreement, it provides liberty to the parties to determine its economic substance. It even allows for restructured loans to be maintained in their original unit of account instead of UDIs. *See id. at Arts.* 153 *et seq*.

32.     To become effective, a restructuring agreement must be accepted by the debtor and creditors representing more than 50 percent of the total "qualified amount" of debt. The qualified amount is equal to (a) all of the debtor's allowed unsecured claims (regardless whether the holders of such claims have accepted the convenio concursal) plus (b) all of the debtor's allowed secured or privileged claims accepting the convenio concursal. *See id. at Art.* 157.

33.     After receiving approval of a reorganization agreement from the debtor's creditors, the Conciliador must then submit the reorganization plan to the court for its own review and approval. Unsecured creditors are entitled to file objections or "veto" the convenio for a set period of time. Following such period, the court may then approve the reorganization plan if it finds that the "proposed agreement meets all of the requirements of this chapter and is not inconsistent with any public policy provision." *See id. at Arts.* 161, 162 and 164.

34.     The convenio concursal, with the validation of the court, would become binding on all accepting secured and privileged creditors and on all unsecured creditors, wether or not they accepted the convenio. *See id. at Art.* 165.

35.     Recent amendments to the Concurso Law that went into effect in December 2007 provide for expedited insolvency procedures and allow for prepackaged bankruptcy proceedings and convenios. The chapter entitled "*Del concurso mercantil con plan de reestructura previo*"

("Of the commercial reorganization with the pre-approved plan") provides that the debtor, may file under that chapter, *inter alia,* if (i) the petition is signed by the debtor together with the creditors representing at least 40% of its outstanding debt; and (ii) petition is accompanied with proposed plan, also signed by debtor together with creditors representing at least 40% of its outstanding debt. *See id. at Arts.* 339-342.  If a debtor files a prepackaged concurso proceeding, it will not need to establish that it is insolvent (but will need to declare that his insolvency is imminent) and there is no need for the appointment of a *visitador*.  The prepackaged plan submitted by a debtor with its concurso petition is referred to as a "preliminary plan," and, once concurso proceedings have been initiated, the debtor must then obtain the support of at least 51% of its "qualified outstanding indebtedness" to confirm a "final plan," which may or may not include some modifications from the preliminary plan.  The conciliador must take into consideration the "preliminary plan" when preparing the "final plan."

36. If a debtor does not successfully complete the concilation phase or, if the debtor so requests, then it will be declared bankrupt (*en quibra*) and liquidated.  *See id. at Art.* 167.

37. The declaration of quiebra results in the removal of management and management of the debtor would then be vested on the síndico. *See id. at Art.* 178.

38. The síndico would proceed with the sale of the assets of the enterprise and the payment of the recognized credits pursuant to the statutory priority of payments.  *See id. at Arts.* 197 *et seq* and 217 *et seq*.

39. The Concurso Law provides for the allowance and prioritization of creditor claims and for the distribution of estate assets to be made in accordance with such priority.

40. The recognition of credits is governed by Articles 120 through 134 of the Concurso Law. The conciliador will prepare a preliminary list of credits based on the debtor's

accounting, the visitador's report, the credit recognition petitions filed by creditors and other information made available to the *conciliador*. *See id. at Art.* 121.

41. A preliminary list is made available by the *conciliator* to the debtor and the creditors for a five-day period, giving them the opportunity to object. *See id. at Art.* 129.

42. Thereafter, the conciliador must prepare the definitive list of claims based on the preliminary list, the additional recognition petitions and the objections presented by the debtor and the creditors. *See id. at Art.* 130.

43. Within five business days thereafter, the judge shall enter judgment for the allowance, categorization and ranking of credits as set forth on the definitive list. *See id. at Art.* 132.

44. The judgment for allowance, categorization and ranking of credits can be appealed by the debtor, any creditor, the intervenors,[4] the *conciliador* (or, if it is the case, the *síndico*), and the Office of the Attorney General. *See id. at Art.* 136.

45. The ranking of creditors is governed by Articles 217 through 228 of the Concurso Law. Apart from the *sui generis* category of "singularly privileged creditors," creditor classes are categorized and ranked as "creditors with collateral," which I understand are referred to in the United States as secured creditors, "creditors with special privileges," which I understand are referred to in the United States as priority creditors and "regular creditors," which I understand are referred to in the United States as unsecured creditors. *See id. at Art.* 217. Labor claims (other than those provided in section I of article 224 of the Concurso Law)[5] and tax claims are

---

[4] Intervenors are similar to committees and can represent multiple creditors.

[5] Labor claims referred to in section XXIII, letter A, of article 123 of the Mexican Constitution and its regulatory laws, including wages accrued two years before the judgment for business reorganization is rendered, will be paid prior to the payment of any other claim provided in article 217 of the Concurso Law. *See id. at Art.* 224.

paid after "singularity privileged creditors" and "creditors with collateral" but before "creditors with special privilege". *See id. at Art.* 221.

46. "Creditors with collateral" or secured creditors are defined as creditors holding claims secured by mortgages and pledges ─ the most common forms of security interests granted in Mexico. The claims of such creditors are paid out of the proceeds of the property that has been collateralized against the mortgage or pledge, and generally in the order that their pledges or mortgages have been registered in accordance with applicable Mexican laws. *See id. at Art.* 219.

47. "Creditors with a special privilege" or priority creditors are "those who, according to the Commercial Code or applicable law, have a special privilege or a retention right," such as bailees. *See id. at Art.* 220.

48. "Regular Creditors" or unsecured creditors consist of all creditors other than those defined above. They collect proceeds of the estate on a *pro rata* basis. *See id. at Art.* 222.

49. In addition to the creditor rankings set forth above, the Concurso Law recognizes certain judicially approved estate administrative claims which receive priority over any other claim. They consist of: (i) labor claims referred to in section XXIII, letter A, of article 123 of the Mexican Constitution and its regulatory laws, including wages accrued two years before the judgment for business reorganization is rendered; (ii) expenses incurred by the debtor in the administration of the estate provided that those expenses are approved by the Conciliador; (iii) expenses incurred in connection with the protection and preservation of the estate; (iv) expenses incurred as a result of judicial or extra-judicial proceedings that benefit the estate; and (v) the necessary expenses and fees incurred by the Conciliador so long as they are in accord with the regulations of the Mexican Institute of Business Reorganization Specialists. *See id. at Art.* 224.

50. The preferences in payment noted in above do not take priority over secured creditors ─ unless (i) the expenses are the result of "any litigation filed to defend or recover any properties which were the subject of the collateral or to which the privilege applies . . . or (ii) expenses necessary for the repair, preservation and sale" of the secured assets. *See id. at Art.* 225.

51. In addition to specified appeal mechanisms foreseen for specific procedural events, the Concurso Law provides for a generic appeal tool against any issue arising during the continuation of the concurso proceeding. *See id. at Arts.* 267 *et seq*.

## METROFINANCIARA'S CONCURSO PROCEEDINGS

52. Recognizing the need to restructure its financial obligations, Metrofinanciera began negotiations with its creditors to consensually restructure its financial affairs under the Concurso Law described above.

53. In order to obtain maximum credibility with its creditors, all but one of the members of Metrofinanciera's board of directors and the Debtor's director general were removed. New board members and top management were appointed to restructure the Debtor. Ultimately, the Debtor and its new management was able to reach a restructuring agreement with all its creditors' groups and proceed with a prepackaged bankruptcy proceeding under the Concurso Law. Immediately prior to the filing of the petition, the Board of Directors of Metrofinanciera was further recomposed with appointees from the diferent creditor constiuencies.

54. Metrofinanciera negotiated a prepackaged convenio or plan of reorganization with its various creditor constituencies and obtained the support of creditors representing approximately sixty-four percent (64%) of Metrofinanciera's outstanding indebtedness, well in

excess of the forty percent (40%) required by the Concurso Law to commence a prepackaged concurso case. On August 13, 2009, Metrofinanciera initiated the Mexican Proceeding by filing a voluntary petition in the Mexican Court. As far as I know, Metrofinanciera's filing was the first prepackaged bankruptcy in Mexican history.

55. On September 11, 2009, the Mexican Court rendered a final judgment, Sentencia de Concurso Mercantil, declaring that Metrofinanciera was "en concurso" (the "Concurso Judgment"). A true and correct copy of the Concurso Judgment in Spanish is attached hereto as Exhibit C. A true and correct copy of the Concurso Judgment in English is attached hereto as Exhibit D. As noted above, it is my understanding that this is akin to the entry of an order for relief under the Bankruptcy Code.

56. Shortly thereafter, the Mexican Court gave notice of the Concurso Judgment to the Ifecom which appointed Mr. Victor Manuel Aguilera Gomez to act as the *conciliador* (the "Conciliador"). On September 29, 2009 the Mexican Court received communication from Mr. Víctor Manuel Aguilera Gómez accepting its appointment as the conciliador in the Mexican Proceeding.

57. In accordance with the Concurso Law, the Conciliador caused the Concurso Judgment to be published in the "*Diario Oficial de la Federación*" on October 21, 2009. A true and correct copy of such notice is attached hereto as Exhibit E. The *Diario Oficial de la Federación* is the official method for providing notice of federal proceedings under Concurso Law. Also, it is my understanding that on November 5, 2009, the Conciliador sent a notice of the Concurso Judgment to BNYM, as indenture trustee for the Perpetual Notes, pursuant to Article 291 of the Concurso Law, which is the substantial equivalent to section 1514 of the Bankruptcy Code.

58. Additionally, Metrofinanciera engaged in its own efforts to provide notice to its creditors. Among other things, Metrofinanciera published notice on its website at http://www.metrofinanciera.com.mx/ConcursoMercantil.aspx, which provided a letter to creditors of Metrofinanciera (the "<u>Letter to Creditors</u>") and an acknowledgement of credits request form (*solicitud de reconocimiento de créditos*)[6] (the "<u>Acknowledgement of Credits Request Form</u>") in Spanish and in English. The Letter to Creditors provided notice that the Mexican Proceeding had commenced and that the Conciliador had been appointed, and encouraged all parties holding claims against Metrofinanciera to submit completed Acknowledgement of Credits Request Forms to the Conciliador for purposes of compiling an accurate list of claims. A true and correct copy of the Letter to Creditors is attached hereto as <u>Exhibit F</u>.

57. As required by the Concurso Law, creditors with Mexican domiciles were given twenty (20) days after the publishing of the Concurso Judgment to file claims, and foreign creditors were given forty-five (45) days.

58. On November 10, 2009, BNYM filed an Acknowledgment of Credits Request Form for claims arising from the Perpetual Notes in the amount of US$111,157,995 (US$100,000,000 for the principal value of the Perpetual Notes and US$11,156,250 for accrued and outstanding interest and US$1,745 for outstanding fees to BNYM). A true and correct copy of the Acknowledgment of Credits Request Form submitted by BNYM is attached hereto as <u>Exhibit G</u>. BNYM's claim was recognized and acknowledged as an Other Unsecured Claim (as defined below) only in the amount of the principal value of the Perpetual Notes – US$100,000,000. A true and correct copy of the final list of claims recognized in the Mexican

---

[6] Under the Concurso Law, a *solicitud de reconocimiento de créditos* is, as I understand, akin to a U.S. proof of claim.

Proceeding is attached hereto as <u>Exhibit H</u>. To my knowledge, BNYM did not appeal the allowed amount of the claims relating to the Perpetual Notes.

59. Metrofinanciera, with the support of the Conciliador, continued to negotiate with creditors during the conciliation phase of the Mexican Proceeding, including those that had not yet accepted the prepackaged plan. Eventually, 68.5% of Metrofinanciera's qualified indebtedness supported the Convenio.

60. The Concurso Law provides an opportunity for creditors to accept the Convenio. On March 16, 2010, the Mexican Court received from the Conciliador the proposed final convenio concursal, and made it available to creditors entitled to accept the convenio for a 10 business-day objection period. A true and correct copy of the final Convenio is attached hereto as <u>Exhibit I</u>. As noted above, once approved by the courts, unsecured creditors have a further opportunity to veto the convenio. To my knowledge, no objections (vetoes) were filed with respect to the Convenio.

61. On June 8, 2010, the Mexican Court entered an order approving the Convenio (*sentencia de aprobación de convenio*) (the "<u>Convenio Order</u>"). Three creditors appealed the Convenio Order, and Metrofinanciera's concurso proceedings will remain pending until such appeal is resolved. Such appeal temporarily stayed the Convenio Order. Such stay, however, has been dissolved and, currently, the Convenio is ready for implementation.

**ADDITIONAL MATTERS**

59. It is my understanding that Section 1507 of the Bankruptcy Code provides that "if recognition is granted, [the court] may provide additional assurance to a foreign representative under the title or under other laws of the United States." 11 U.S.C. §1507 (c). It is also my understanding that the Bankruptcy Code explains that whether the Court should provide for

additional assistance depends upon the Court's determination that additional assistance, consistent with the principles of comity, will reasonably assure: (a) just treatment of all holders of claims against or interests in the debtor's property; (b) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (c) prevention of preferential or fraudulent dispositions of property of the debtor; (d) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (e) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. 11 U.S.C. § 1507 (b).

**Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property**

60. The Concurso Law adheres to the *par conditio creditorum* principle under which all creditors placed in the same situation shall be treated equally. This principle is gathered throughout several disperse provisions of the Concurso Law. For example: (i) preferences and fraudulent transfers are avoidable (*See id. at Arts.* 112 *et seq*); (ii) during the concurso proceeding, individual agreements among a creditor and a debtor shall be null and void (*See id. at Art.* 154); (iii) all creditors are permitted to submit proof of claims (*See id. at Art.* 122); (iv) no special licensing or permits are required to file proof of claims; (v) any creditor has the right to contest any action from the insolvency courts (*See id. at Arts.* 267 *et seq*); (vi) ranking and priority is specified in law (*See id. at Arts.* 217 *et seq*); (vii) no creditor of an inferior ranking can be paid until all creditors of a higher ranking are paid in full (*See id. at Art.* 223).

**Protection of Foreign Creditors**

61. In principle, the Concurso Law makes no distinction among local or foreign creditors (including US creditors). Actually, foreign creditors (including US creditors) are

afforded some substantive and procedural benefits in Articles 290 and 291 of the Concurso Law, which were modeled on Articles 13 and 14 of the UNCITRAL Model Law.

### Protection Against Preferential or Fraudulent Disposition of Property

62.     The Concurso Law contains several protections against the preferential or fraudulent disposition of property of a debtor's estate.

63.     First, throughout the entire process of reorganization, the debtor's estate is subject both to (i) the review of the court and (ii) the supervision of the outside examiner (in the initial phase) and the independent Conciliador (in the conciliation phase). *See id. at Art.* 75.

64.     Second, Chapter VI of the Concurso Law (Articles 112-119) sets forth specific provisions prohibiting fraudulent acts against creditors, including fraudulent conveyances, self-dealing transactions, transactions with family members, and transactions with related business associations, if done without proper consideration. Finally, if the Conciliador may ask the supervising court to remove the debtor's management if he suspects the presence of fraud or preferences or otherwise determines such removal to be for the benefit of the bankruptcy estate. *See id. at Art.* 81.

### Provisions Pertaining to Priority and Distribution of Property or Proceeds from the Estate

65.     The Concurso Law provides for the recognition and prioritization of creditor claims and for the distribution of estate assets to be made in accordance with that ranking. Sections 39 through 50 describe them in detail.

### Provisions Pertaining to an Opportunity for a Fresh Start

66.     While not specifically addressed in the Concurso Law as such, the principles of discharge and fresh start are derived from two fundamental principles contained in the Concurso Law: (i) The convenio concursal, with the validation of the court, would become binding on all

subscribing creditors and on all unsecured creditors; and (ii) Upon expiration of the statutory term to seek allowance of a claim, no additional claims can be allowed. *See id. at Arts.* 122 and 165.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed on August 29, 2010 at Monterrey, Nuevo Leon, Mexico.

*/s/ Eugenio Sepulveda*
Eugenio Sepulveda
